CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

ABRAHAM A, SIMMONS (CABN 146400)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7264
    FAX: (415) 436-7234
    Abraham.Simmons@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>EDGAR ALEXIS GARCIA RIEGO,<br><br>    Defendant. | CASE NO. CR 3:25-CR-00238 MMC<br><br>**UNITED STATES' SENTENCING MEMORANDUM**<br><br>Court:    Hon. Maxine M. Chesney<br>Hearing Date:    December 10, 2025<br>Place:    Courtroom 7, 19th Floor<br>Hearing Time:    2:15 P.M. |

### I. INTRODUCTION

The defendant Edgar Alesis Garcia Riego is a 38-year-old Mexican-born resident of Veracruz, Mexico, who was traveling through the United States on July 19, 2025, from Mexico City with a final destination of Bangkok, Thailand. He was carrying with him an Apple iPhone 16 pro Max. After being stopped and during questioning by federal agents at San Francisco International Airport ("SFO"), Garcia Riego admitted that before he arrived at the airport, he had received on his iPhone images of young people engaged in sexual acts. He admitted he paid $5 per month to join a Telegram group chat that provided him with the child pornography, that he received 20 videos soon after joining the group, and that he received another 100 videos within the next week. Garcia Riego acknowledged he never erased

any of the images he received from the group chat. Garcia Riego pleaded guilty to possession of child pornography and admitted he is responsible for possession of 600 or more images.

The government acknowledges that Garcia Riego's conduct—even though he has no reported previous arrests or convictions—results in a Sentencing Guidelines imprisonment range of 51 to 63 months. The United States nevertheless requests that the court accept and adopt the parties' joint recommendation for a "time served" sentence. Specifically, the government recommends a sentence of time served and one day, with five years of supervised release to follow (effectively a 15-level downward variance from the otherwise applicable Guidelines range). The terms of the supervised release should include the special conditions enumerated in Appendix A of the written plea agreement. The government believes that this sentence is sufficient, but not greater than necessary, to comply with the purposes of 18 U.S.C. § 3553.

## II.   OFFENSE CONDUCT

On July 19, 2025, Garcia Riego flew from Mexico City to SFO. Garcia Riego was traveling with his female cousin and her 11-year-old son through SFO to Narita, Japan, with a final destination of Bangkok, Thailand. Garcia Riego had been placed on a CBP lookout for secondary inspection and questioning about Child Sexual Abuse Materials ("CSAM"). Specifically, the alert suggested Garcia Riego may have been using the Telegram application to view CSAM.

After he arrived at SFO, Garcia Riego was questioned by Customs and Border Patrol ("CBP") agents who eventually confiscated his Apple iPhone 16 Pro Max and his Apple iPad. Garcia Riego provided password information for the iPad and for general access to part of the iPhone (as described further below). After he was screened by the CBP agents, Garcia Riego was questioned by a Homeland Security Investigations (HSI) specialist. As a result of the interviews and the initial search of the iPhone, the following facts were uncovered:

- A manual search of the device confirmed that the Telegram application was on the iPhone. CBP officers also found more than 20 video thumbnails that appeared to contain CSAM.
- The initial search also uncovered software in the form of a hidden "vault" that was installed on the iPhone which was password protected to hide files. Garcia Riego's

iPhone showed the application used roughly 3.17GB of storage on the iPhone. Garcia Riego provided a passcode for the application, which showed approximately five or six videos that cumulatively were less than 1GB total. Garcia Riego admitted he had used multiple passwords in the past but then stated he could not remember any other passwords.

- Officers found one video that showed a prepubescent boy receiving anal sex from an adult male while other young boys posed naked. Other videos showed minor boys performing oral sex on adult males.

- Garcia Riego admitted that he paid $5 per month to join the Telegram group chat. He also admitted that when he first joined the Telegram group chat, there were about 20 videos. Garcia Riego stated he saw three videos he did not like in the Telegram group and then stopped watching. He stated he entered the Telegram group two to three times and then did not watch anything after that. He stated that when he checked the group chat a week later, there were roughly 100 videos. He admitted that he did not erase any of the content he received from the Telegram group chat.

- Garcia Riego stated that he expected to be thrown out of the group after one month. He admitted that he did not do anything to get his named removed from the group chat.

As noted in the PSR, information regarding the child sexual abuse material found on Garcia Riego's device has been submitted to the National Center for Missing and Exploited Children (NCMEC). According to the NCMEC Child Identification Report, Garcia Riego's device contained seven image files and seven video files that were matched to nine known series of child sexual abuse material victims. After a diligent search, only four victims have been identified. The information regarding the identifiable children establishes that they all have indicated that either they did not want to be contacted or that they are not interested in being compensated by possessors of these images.

### III.    PROCEDURAL HISTORY

On July 21, 2025, a Criminal Complaint was filed charging Garcia Riego with 18 U.S.C. §§ 2252A(a)(5)(B), and (b)(2) - Possession of Child Pornography.

1     On August 7, 2025, a single-count Information was filed in the Northern District of California,
2 charging Garcia Riego with a violation of 18 U.S.C. §§ 2252A(a)(5)(A) and (b)(2) – Possession of Child
3 Pornography (Count One). The Information contains a Forfeiture Allegation filed pursuant to 18 U.S.C.
4 § 2253(a).

5     On October 8, 2025, the defendant pleaded guilty to Count One of the Information. Garcia Riego
6 signed a written Plea Agreement, filed pursuant to Rules 11(c)(1)(A) and 11(c)(1)(B) of the Federal
7 Rules of Criminal Procedure.

8     Judgment and Sentencing are currently scheduled for December 10, 2025, at 2:15 p.m., before
9 this Court—the Honorable Maxine M. Chesney, Senior United States District Judge.

## IV. SENTENCING GUIDELINES CALCULATION

The parties agreed to a plea agreement resulting in an adjusted offense level of 24. The calculation is as follows:

| | | |
|---|---|---:|
| a. | Base Offense Level, U.S.S.G. § 2G2.2(a)(1): | 18 |
| b. | Specific offense characteristics under U.S.S.G. Ch. 2 (*e.g.*, amount of loss, use of firearm) | -- |
| | U.S.S.G. § 2G2.2(b)(2) (minor under 12 years of age) | +2 |
| | U.S.S.G. § 2G2.2(b)(6) (use of a computer) | +2 |
| | U.S.S.G. § 2G2.2(b)(7) (600 or more images) | +5 |
| c. | Adjustments under U.S.S.G. Ch. 3 (*e.g.*, role in the offense) | -- |
| d. | Acceptance of Responsibility: | - 3 |
| | If I meet the requirements of U.S.S.G. § 3E1.1, I may be entitled to a three-level reduction for acceptance of responsibility, provided that I forthrightly admit my guilt, cooperate with the Court and the Probation Office in any presentence investigation ordered by the Court, and continue to manifest an acceptance of responsibility through and including the time of sentencing. | |
| e. | Adjusted Offense Level: | 24 |

The government agrees with probation's calculation of the criminal history category of I. PSR ¶ 39.

The government stands by its plea agreement. Pursuant to the plea agreement, and as detailed below, the government recommends a sentence of time served and one day, with five years of supervised release to follow—the terms of the supervised release should include the special conditions noted in Appendix A of the written plea agreement.[1] The government believes that this sentence is sufficient, but not greater than necessary, to comply with the purposes of 18 U.S.C. § 3553.

## V.     APPLICABLE LAW

The Court should impose a sentence sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The Court should begin the process of determining an appropriate sentence by calculating the correct sentencing range under the Guidelines. *Id.* After determining the appropriate Guidelines calculation, the Court should then evaluate the sentence for substantive reasonableness in light of the factors set out in Section 3553(a). *Id.* at 991–93.

Under 18 U.S.C. § 3553(a), in arriving at the appropriate sentence for the defendant, the Court should consider these factors applicable to this case, among others:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(3) the need for the sentence imposed to afford adequate deterrence to criminal conduct;

(4) the need for the sentence to protect the public from future crimes of the defendant;

(5) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(6) the need to provide restitution to any victims of the offense.

///

///

---

[1] *See* Plea Agreement ¶ 17 and Appendix A.

## VI. RECOMMENDED SENTENCE AND SECTION 3553(a) FACTORS

Based upon a consideration of the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553(a), the government respectfully recommends a sentence of time served and one day (just under five months in custody), with five years of supervised release to follow. Such a sentence effectively would be a 15-level downward variance from the otherwise applicable Guidelines range.

The nature and circumstances of the offense of conviction are serious. The effects of child pornography on children cannot be overstated. Because of demand for these materials, children are sexually exploited and assaulted in ways that create lifelong trauma to victims and their families. Garcia Riego's conduct encourages the sexual exploitation of children. He paid for the materials, viewed at least some of the materials, and he did absolutely nothing to erase what he had received nor to prevent the seller from sending him more materials. This said, the evidence uncovered to date does not establish that the defendant viewed or intended to view many of materials he had on his iPhone; this amounts to a small subset of the materials he possessed. Further, the defendant is a physician with no criminal history. He states that he is now aware of the impact that his behavior can have on the affected subjects, and that he believes his conduct can promote the victimization of such children. *See* PSR at ¶ 20. He also convincingly has expressed his goals to (1) never hurt anyone, (2) help people and, (3) never behave "like that" again. *Id.* Accordingly, the government's sentencing recommendation is rooted in the expectation that defendant's history and characteristics, as well as the nature of the offense, all suggest his conduct can be adequately addressed with a relatively short custodial sentence.

The government's recommended sentence also promotes respect for the law and provides just punishment for the offense. At the time of sentencing, Garcia Riego will have been in custody for just short of five months. He has accepted responsibility for this serious charge and he has acknowledged that he violated the law. Two of the facts described above are particularly relevant to this part of the analysis. First, Garcia Riego states that he viewed only a small number of the images that he possessed. Second, he suggests that he did not expect to receive additional CSAM from the Telegram group chat after his receipt of the first few images. ("It's supposed to throw you out of the group after one month." *See* PSR at ¶ 11.) In light of these facts, the proposed sentence provides just punishment for the offense and the sentence promotes respect for the law. The government recognizes that Garcia Riego does not adequately account

for why he did not immediately stop the delivery of additional CSAM being sent to him through his Telegram group chat (once he discovered what it was). Nor did Garcia Riego ever adequately explain why he never deleted (i.e., continued to possess) the CSAM he already had received. Nevertheless, the totality of the circumstances surrounding the offense—and particularly defendant's acknowledgement of his wrongdoing, expressions of remorse, and commitment to refrain from engaging in such conduct in the future—validate that the time served sentence still is appropriate.

For similar reasons, the government's proposed resolution to this matter also provides sufficient general and specific deterrence. This experience certainly will deter Garcia Riego from ever again entering the United States with CSAM. Moreover, travelers and U.S. residents alike who review the outcome of this case would be deterred from possessing CSAM.

To the extent that a time served sentence would result in a sentencing disparity among defendants with similar records who have been found guilty of similar conduct, such disparity is warranted under the facts of this case because of the short amount of time Garcia Riego intended to be in the United States. There is no question that Garcia Riego understood that when he arrived at SFO on July 19, 2025, he had possession of a large quantity of CSAM on his phone. Nevertheless, he expected that his presence in the United States would be brief. For some crimes, the brevity of presence in the United States would not matter. Here, however, the defendant was charged with possession only and there is no indication he intended to use his presence in the United States to facilitate an effort to further disseminate the illegal contraband. Under these circumstances, the passing nature of defendant's visit to the United States can justify the disparity of his sentence as against other persons who have violated the same law.

Lastly, nothing in the proposed sentence would hamper an effort to provide restitution to victims. The information regarding the child sexual abuse material found on Riego's iPhone was submitted to NCMEC and a Victim Identification Report was generated. No identifiable victims have indicated a desire to submit victim impact statements or requests for restitution. Accordingly, a time served sentence would not frustrate any attempt to provide victim restitution.

## VII. CONCLUSION

For the reasons stated above, the government recommends that this Court impose a sentence that includes a custodial component of time served and one day as well as five years of supervised release.

1 | The terms of the supervised release should include the special conditions enumerated in Appendix A of
2 | the written plea agreement (as justified in the PSR). The government believes that this sentence is
3 | sufficient, but not greater than necessary, to comply with the purposes of 18 U.S.C. § 3553.

4 | DATED: December 3, 2025               Respectfully submitted,

                                         CRAIG H. MISSAKIAN
                                         United States Attorney

                                         */s/ Abraham Simmons*
                                         ABRAHAM A. SIMMONS
                                         Assistant United States Attorney